IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Civil Action No. 1:23-cv-01163 (MSN/WBP) ) |
| URBAN SIGN & CRANE, INC, *et al.*, | ) ) |
| Defendants. | ) |

### PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

Before the Court is Plaintiffs Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), Sheet Metal Workers' International Association Scholarship Fund ("Scholarship Fund"), National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), and Sheet Metal Workers' Occupational Health Institute Trust's ("SMOHIT") (collectively, "Plaintiffs" or "Funds") Motion for Default Judgment against Defendants Urban Sign & Crane, Inc. ("US"), Urban Manufacturing LLC ("UM"), and D2 Manufacturing, LLC ("D2"). (ECF No. 33.) This serves as a proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C), and a copy will be provided to all interested parties.

### I.   Procedural Background

Plaintiffs are a collection of employee benefit plans/trust funds and joint labor-management organizations that are administered from offices in Falls Church, Virginia. (ECF No. 34 at 2.) Defendants are New Jersey corporations that employ trade workers who manufacture and hang commercial signs. (*Id.*)

1

In connection with certain of its business projects, Defendants executed collective bargaining agreements ("CBAs") with Local Union Nos. 19 and 137 that require Defendants to make certain payments to Plaintiffs to benefit Plaintiffs' members, which include Defendants' employees. (*Id.* at 2-3.) Having failed to make all these payments, Plaintiffs sued Defendants seeking to recover fringe benefit contributions owed to Plaintiffs under the CBAs. (*Id.* at 2.)

On August 31, 2023, Plaintiffs filed a single count Complaint against both US and UM seeking to recover delinquent contributions, liquidated damages, interest, attorneys' fees, and costs under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (ECF No. 1 ¶ 25.) The same day, the Clerk issued summonses for service on US and UM (ECF No. 3), which were served on US and UM on September 4, 2023, and required answers by September 28, 2023 (ECF No. 4).

UM filed a timely answer on September 28, 2023, in which it denied any liability to Plaintiffs. (ECF No. 5.) US never answered or otherwise responded to the Complaint, and the Clerk entered a default against US on January 10, 2024. (ECF No. 13.)

On March 14, 2024, UM's counsel moved to withdraw from the case (ECF No. 13), and on March 20, 2024, UM's counsel moved for leave to file an amended complaint to add D2 to the action (ECF No. 19). On March 29, 2024, the Court granted UM's counsels' motion to withdraw with the condition that UM's counsel inform UM that it must obtain new counsel by April 8, 2024, or risk a default judgment. (ECF No. 22.) The same day, the Court also granted Plaintiffs' motion for leave to file an amended complaint, which was filed that same day (ECF Nos. 23-24). The amended complaint added D2 as a defendant and set out claims against each Defendant in three counts. (ECF No. 24 ¶¶ 48-64.)

2

D2 was served with the amended complaint on April 10, 2024 (ECF No. 28), but it failed to answer or respond by May 1, 2024. UM also failed to retain new counsel by the April 8, 2024, deadline, and it failed to respond to the amended complaint. Therefore, the Clerk entered a default against UM and D2 on April 23, 2024, and May 6, 2024, respectively. (ECF Nos. 30 and 32.)

The Court held a hearing on Plaintiffs' Motion for Default Judgment on June 21, 2024. Plaintiffs' counsel appeared, but no one appeared on behalf of any of the Defendants. After the hearing, Plaintiff submitted further briefing as requested by the Court. (ECF No. 42.)

## II.     Factual Background

The Complaint (ECF No. 1), the Amended Complaint (ECF No. 24), and Plaintiffs' Memorandum in Support of Default Judgment with accompanying exhibits (ECF No. 34) establish these facts.

US hired employees who were members of the International Association of Sheet, Metal, Air, Rail, and Transportation Union, Local Unions 19 and 137, and US executed CBAs with Local Unions 19 and 137. (ECF No. 24 ¶¶ 17-18.) The CBAs required US to submit monthly remittance reports and fringe benefit contributions to Plaintiffs on behalf of US's covered employees, who were members of Local Unions 19 and 137 and who manufactured and hung commercial signs within the jurisdictions of Local Unions 19 and 137. (*Id.* at 18-24.) Under the CBAs, US was required to make these payments to Plaintiffs by the twentieth day of the month after the employees were paid, and these payments were considered delinquent if not timely made. (*Id.* ¶¶ 28-29.)

UM also entered a separate CBA with Local Union 19 that covered UM's employees who performed work within Local Union 19's jurisdiction from July 15, 2021, through July 14, 2024. (ECF No. 34 at 3.) UM and Local 19's CBA required UM to submit monthly remittance reports

3

and fringe benefit contributions to Plaintiffs for all hours worked or paid on behalf of its covered employees within Local Union 19's jurisdiction. (*Id.* at 7.)

While UM was not a party to US's CBAs with Local Unions 19 and 137, Plaintiffs allege that UM is an alter ego of US established to evade US's obligations to Plaintiffs under the CBAs. (ECF No. 34 at 4-5.) In support of this position, Plaintiffs provided evidence establishing these facts: (1) Seth Davis founded both US and UM; (2) MaryAnn Gonyea serves as an officer of both US and UM; (3) US and UM employ the same or similar classifications of employees, some of whom work interchangeably for both US and UM; (4) US and UM perform the same type of work in the same geographic market; (5) US and UM share the same business address listed on their corporate filings; (6) US and UM share the same website and phone number; and (7) UM has paid US's employees for overtime hours worked for US. (ECF No. 34 at 3-4.) As an alter ego of US, Plaintiffs claim that UM is an employer pursuant to 29 U.S.C. §§ 152(2) and 3(5) of ERISA and that UM is jointly and severally liable for US's obligations under the CBAs with Local Unions 19 and 137. (*Id.* at 4-5.)

Plaintiffs also allege that D2 is an alter ego of US and UM. (*Id.* at 5.) In support of this position, Plaintiffs provided evidence establishing these facts: (1) Larena Davis, Seth Davis's wife, founded D2; (2) Maryann Gonyea serves as an officer of D2—making her an officer of all three entities; (3) D2 employs similar classifications of employees as US and UM; (4) D2 has paid US's employes for overtime hours worked for US; (5) D2 performs the same type of work in the same geographic market as US and UM; and (6) Seth Davis has posted on his social media pages about work by "Urban Sign/D2." (*Id.* at 5-6.) Because D2 also was established to evade US's and UM's obligations under the CBAs, Plaintiffs allege that they are an employer under ERISA and are jointly and severally liable to Plaintiffs for US's and UM's obligations. (*Id.*)

4

### III.     Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure allows entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because Defendants have failed to respond or otherwise defend the action, the Clerk entered default against all of them. (ECF Nos. 13, 30, 32.)

Once in default, the facts alleged in a complaint are considered admitted against the defendants, and the appropriate inquiry is whether the facts alleged state a claim. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the court does not automatically consider as admitted the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to conduct a hearing to determine the amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

#### A.     Jurisdiction and Venue[1]

A court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of

---

[1] The amended complaint only alleges subject matter jurisdiction and venue. (ECF No. 24 at 3 ¶¶ 5-7.) But Plaintiffs allege personal jurisdiction over Defendants in their Memorandum in Support of the Motion for Default Judgment. (ECF No. 34 at 13.)

Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C. § 1337(a). ERISA specifically vests district courts with jurisdiction to grant relief to a participant, beneficiary, fiduciary, or any person of an employee benefit plan. *See* 29 U.S.C. § 1132(e)(1). Plaintiffs administer the employee benefit plans at issue in this litigation from Falls Church, Virginia, giving this Court subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1132(e)(1). This Court may also exercise personal jurisdiction over Defendants, as the plan is administered in this district and the statute allows for nationwide service of process. 28 U.S.C. § 1132(e)(1)-(2). Venue is also proper because, as stated, the Funds administer the plans within this district. 28 U.S.C. § 1132(e)(2).

    **B.**    <u>**Service**</u>

Before entering default judgment, a court must determine that the defaulting party was properly served. Service is proper under ERISA in any district where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Federal Rule of Civil Procedure 4(h)(1)(B) allows service to be made, among other ways, by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

According to the affidavits of service filed with the Clerk, a private process server served the summons and Complaint on US's and UM's registered agents in New Jersey on September 1, 2023 (ECF No. 4), and a different private process server served the summons and Amended Complaint on D2's registered agent in New Jersey on April 10, 2024 (ECF No. 28). Thus, all Defendants were properly served with the summonses and operative complaint.

## C. Grounds for Entry of Default

Under Federal Rule of Civil Procedure 12(a), Defendants had to file responsive pleadings within 21 days after they were served with the summonses and complaints. Thus, responsive pleadings were due for US and UM by September 22, 2023, and for D2 by May 10, 2024. No responsive pleadings have been filed by US or by D2, and the deadlines have expired. While UM initially answered the Complaint, its counsel moved to withdraw and UM was instructed to have new counsel make an appearance on or before April 8, 2024, at the risk of a default. D2 was served with the Amended Complaint on April 3, 2024 (ECF No. 28) but never responded to it.

On January 9, 2024, Plaintiffs requested an entry of default as to US, which the Clerk entered on January 10, 2023. (ECF Nos. 10, 13.) On April 18, 2024, Plaintiffs requested an entry of default as to UM, which the Clerk entered on April 23, 2024. (ECF Nos. 29, 30.) On May 2, 2024, Plaintiffs requested an entry of default as to D2, which the Clerk entered on May 6, 2024. (ECF Nos. 31, 32.)

Accordingly, the Clerk properly entered default as to all Defendants.

## D. Liability

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because a default has been entered against all Defendants, the complaint's factual allegations are considered admitted as to them. *See* Fed. R. Civ. P. 8(b)(6). Plaintiffs allege that they were not paid contributions owed under the CBAs. (ECF No. 24 ¶¶ 39–64.) Plaintiffs also seek delinquent contributions, liquidated damages, interest, attorneys' fees, and costs. (*Id.*)

Plaintiffs seek default judgments against Defendants for violating ERISA and the LMRA. (ECF No. 34 at 17-18.) ERISA requires "every employer who is obligated to make contributions

7

to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

Separate from ERISA, the LMRA permits labor organizations to file federal suits against employers for breaching collective bargaining agreements. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties[.]"). So the LMRA serves as a separate vehicle for relief and supplements the relief provided by ERISA. *See Bd. of Trustees, Nat. Stabilization Agreement of Sheet Metal Indus. Tr. Fund v. AKS, LLC*, No. 1:14CV97 LMB/TRJ, 2014 WL 3749710, at *4 (E.D. Va. July 29, 2014) (citing *Bugher v. Feightner*, 722 F.2d 1356, 1359 (7th Cir. 1983)).

ERISA[2] provides these damages for suits brought by a labor organization against an employer who fails to make required contributions:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of –

    (i) interest on the unpaid contributions, or

    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A);

---

[2] ERISA was intended to supplement the existing right to bring a suit for breach of a collective bargaining agreement under the LMRA. *See Bd. of Trustees, Nat. Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. 5 Starr Serv. & Constr.*, LLC, No. 1:15-cv-403 LMB/MSN, 2015 WL 4139226, at *3 (E.D. Va. July 8, 2015).

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 1. CBAs

In support of their claims, Plaintiffs provided an affidavit from Robert Geisler, NFP's Collections Manager. (ECF No. 34-1.) Geisler's role is to monitor employers' contributions and reports to the Sheet Metal Workers Benefit Funds, which includes NPF, ITI, Scholarship Fund, SASMI, and SMOHIT. (ECF No. 34-1 ¶ 2.) Mr. Geisler's affidavit supports the contention that Plaintiffs are benefit plans/trust funds under ERISA, that they are located in Falls Church, VA, and that they may bring suit under 29 U.S.C. § 185(a). (*Id.* ¶ 4.) Attached to Mr. Geisler's affidavit are copies of the relevant CBAs with US that cover the period from August 1, 2019, through July 31, 2025[3] ("Local 137 CBAs") and copies of the CBA between US and Local Union 19 ("Local 19 US CBA") and between UM and Local Union 19 ("Local 19 UM CBA"), both of which cover the period from July 15, 2021, to July 14, 2024. (*Id.* ¶¶ 5-7; ECF No. 34-1, Exs. 1, 2, 3, and 4.)

Under Article X, Sections 2-5 of the Local 137 CBAs and Article XII-XIV of the Local 19 US CBA, US was required to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for all hours worked on behalf of its covered employees within Local 137 and 19 jurisdictions.[4] (*Id.* ¶ 16.) The Local 19 UM CBA only requires employers to remit

---

[3] US has two separate CBAs with Local 137 that cover different periods. The first CBA covers the period from August 1, 2019, to July 31, 2022; the second CBA covers the period from August 1, 2022, to July 31, 2025. (ECF No. 34 at 2-3.)
[4] US is only obligated to remit contributions to SMOHIT under the Local 137 CBAs. (ECF No. 34-1 n. 1.)

9

contributions to the Funds outside of limited circumstances described in Article II(B) of those CBAs.[5] (*Id.* ¶ 8.) Article XII-XIV of Exhibit 3 provides the payment amounts due to the Funds. (*Id.* ¶ 20.) All payments and remittance reports were due no later than the twentieth day after the end of each month. (*Id.*) Exhibit 10, the Trust Document, provides the following if Defendants make delinquent contributions: the interest rate for delinquent contributions in the amount of .0233% per day; liquidated damages equal to the greater of $50 or 10% of the contributions due for each month Defendants failed to pay before suing; liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or 20% of the delinquent contributions owed upon the commencement of litigation; and attorneys' fees and costs incurred in pursuing the delinquent amounts. (*Id.* ¶ 21.)

### 2. UM and D2 as Alter Egos to US

Plaintiffs allege that its records show US and UM failed to submit remittance reports and contributions to the Funds from July 2021 through the present, as required by the CBAs. (ECF No. 34 at 16-18.) Therefore, US and UM are liable for the amounts owed under each CBA as well as damages asserted by Plaintiffs. (*Id.*) Plaintiffs also argue that UM and D2 are alter egos of US, and are thus jointly and severally liable for the delinquent contributions. (*Id.* at 18-19.)

District courts within the Fourth Circuit have adopted the following standard for alter ego claims in ERISA cases: (1) whether "substantially" the same entity controls both the new and old employer; and (2) whether the transfer resulted in an expected or reasonably foreseeable benefit to the older employer related to the elimination of its labor obligations? *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. JTL Air Conditioning & Refrigeration, Inc.*, No. 119-cv-

---

[5] UM must submit monthly remittance reports and fringe benefit contributions for NPF, ITI, the Scholarship Fund, and SASMI for all hours worked on behalf of its covered employees within the Local 19 jurisdiction.

00169LMBMSN, 2019 WL 3816279, at *4 (E.D. Va. June 4, 2019) (citing *Alkire v. N.L.R.B.*, 716 F.2d 1014, 1020 (4th Cir. 1983)). To determine whether the companies are controlled by substantially the same entities, courts have looked at whether the management, business purposes, operation, equipment, customers, supervision, and ownership are the same. *See Bd. of Trustees Sheet Metal Workers' Nat'l Pension Fund v. Crenshaw & Burke Constr., Inc.*, No. 119-cv-561TSETCB, 2020 WL 535970, at *3 (E.D. Va. Jan. 17, 2020), *report and recommendation adopted*, No. 1:19-cv-561, 2020 WL 534050 (E.D. Va. Feb. 3, 2020).

Based on the facts alleged, UM, D2, and US are controlled by substantially the same entity thereby satisfying the first prong of the ERISA alter ego analysis. According to Mr. Geisler's affidavit, all three companies have overlapping management and ownership: Mary Ann Gonyea is an officer of UM, D2, and US; Seth Davis founded and owns US, while his mother, Beth Ann Davis, founded UM, and his wife Laura Davis founded D2. (ECF No. 34-1 ¶¶ 9a., 9b.,13a., 13b.) Additionally, Seth Davis has posted information on social media indicating a strong relationship between US and D2, which demonstrates overlapping ownership and management. (*Id.* Ex. 6.) All three companies also have the same business purpose and operation, and the employees of all three companies are similarly classified and are similarly trained. (*Id.* ¶¶ 9c., 13c.) The employees also have worked for all three companies interchangeably. (*Id.*) More telling, UM and D2 have paid their employees for working for US. (*Id.* ¶¶ 9b., 13e., Ex. 8.) Defendants also perform the same type of work—manufacturing signs for companies—in the same geographic market—New York and Southern New Jersey. (*Id.* ¶¶ 9d., 9e., 13d.) US and UM also identify on their corporate filings the same website, phone number, and business address. (*Id.* ¶¶ 9e., 9f.) *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. J&J Advanced Thermal Sols., Inc.*, No. 1:22-cv-557 (RDA/WEF), 2022 WL

11

3500201, at *3 (E.D. Va. Aug. 1, 2022), *report and recommendation adopted*, No. 122-cv-00557RDAWEF, 2022 WL 3448040 (E.D. Va. Aug. 17, 2022) (finding alter ego relationship where companies, among other things, used the same website).

The shared ownership, management, operations, equipment, customers, and centralized control of employees used interchangeably between US, UM, and D2 resulted in a reasonably foreseeable benefit related to the elimination of Defendants' labor obligations. US appears to have used UM to avoid making pension and fringe benefit contributions as required by the CBAs. (*Id.* ¶ 10.) UM managed to do this, in part, because its CBAs only required UM to contribute to the Funds if certain factual circumstances had been met. (ECF No. 34 at n.4.) *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Burris Constr. Co., LLC*, No. 119-cv-1499RDATCB, 2020 WL 2212507, at *4 (E.D. Va. Feb. 25, 2020), *report and recommendation adopted*, No. 119-cv-1499RDATCB, 2020 WL 2194025 (E.D. Va. May 6, 2020) (finding reasonably foreseeable benefit where second company was not subject to first company's CBA obligations).

Similarly, the evidence shows that D2 was created for the benefit of both UM and US and that D2's creation allowed UM and US to avoid their obligations under the CBAs to make required pension and fringe benefit contributions to Plaintiffs. (ECF No. 34-1 ¶ 14.) This is evidenced, in part, by the payment of overtime hours by D2 and UM for the benefit of US's employees. (*Id.* ¶¶ 10, 14, and Ex. 8.) Therefore, both prongs of the ERISA alter ego analysis have been satisfied, meaning D2 and UM are alter egos of US and are jointly and severally liable for US's obligations arising from the CBAs. *See, e.g.*, *JTL Air Conditioning & Refrigeration, Inc.*, 2019 WL 3816279, at *4-5.

E. **Damages**

1. **Contributions, Interest, and Liquidated Damages**

According to Mr. Geisler's affidavit, between July 2021 and February 2024, US and UM failed to submit remittance reports and contributions to the Funds on time as required by the CBAs. (ECF No. 34-1 ¶¶ 22, 25.) Similarly, D2 and UM failed to pay overtime contributions for covered employees, which were unreported to the Funds.[6] (*Id.* ¶¶ 22, 26.) The CBAs provide Plaintiffs with the following remedies for delinquent payments: (1) liquidated damages equal to the greater of $50 or 10% of the contributions due for each month of delinquent payments; (2) interest on the delinquent payments at a rate of 0.0233% per day; (3) liquidated damages equal to the greater of interest on all delinquent contributions or 20% of the contributions unpaid; and (4) attorneys' fees and costs incurred based on the failure to pay. (ECF No. 34 at 8.)

Plaintiffs used the Funds' records to determine the amount owed by US and UM. (*Id.* at 18; ECF No. 42-1.) For the period between July 2021 and February 2024, Plaintiffs contend that US owes contributions of $26,278.97, interest of $4,292.17, and liquidated damages of $5,255.80, totaling $35,826.94. (ECF Nos. 34-1 ¶ 23; 42 at 1-2.) Of this total, Plaintiffs attribute $33,301.11 to US's delinquent contributions for regular hours worked, $1,912.97 to overtime amounts paid by US through UM, and $612.86 to overtime amounts paid by US through D2. (ECF Nos. 42 at 1-2; 42-1.) As alter egos of US, UM and D2 are responsible for their respective overtime amounts as well as all of US's delinquent contributions. (*Id.*) In addition, UM owes payments based on its own failure to fulfill its obligations under the CBAs. (ECF No. 34-1 ¶ 25.) For the months of July 2021 through February 2024, UM is liable for its own missing

---

[6] Plaintiffs allege that US is jointly and severally liable for the unreported and missing contributions for overtime hours worked by D2 employees. (ECF No. 34-1 ¶ 22.)

13

contributions in the amount of $1,602.12, interest on those missing payments in the amount of $222.29, and $320.42 in liquidated damages. (*Id.*) In total, based on its role as an alter ego for US and its own obligations under the CBAs, UM is liable to Plaintiffs in the amount of $37,358.97 ($33,301.11 (US Contributions) + $1,912.97 (US overtime paid through UM) + $2,144.83 (UM Contributions)). (ECF Nos. 34-1 ¶¶ 25-27; 42 at 1-2.) (*Id.* ¶ 28; ECF No. 42 at 2.) As an alter ego of US and UM, D2 is jointly and severally liable for all amounts owed by US and UM from July 2021 to present, totaling $37,358.91. (*Id.*) D2 also is liable for overtime hours paid on behalf of US employees, which amounts to $612.86. (ECF No. 42 at 1-2.) In total, D2 owes Plaintiffs $37,971.77 ($37,359.91 + $612.86). (*Id.* at 2.)

The undersigned recommends that this Court order Defendants to restore the losses to the Plan, as well as the interest on these payments, as shown in the table below.

|  | Contributions | Interest | Liquidated Damages | Total | Alter Ego Liability | Total |
|---|---|---|---|---|---|---|
| US | $24,439.83 (US regular hours) | $3,973.32 (US regular hours) | $4,887.97 (US regular hours) | $33,301.11 | $1,912.97 + $612.86= $2,525.83 | $35,826.94 |
| UM (overtime for US) | $1,386.06 | $249.70 | $277.21 | $1,912.97 | $33,301.11 | $35,214.08 |
| UM (regular hours) | $1,602.12 | $222.29 | $320.42 | $2,144.83 | $35,214.08 | $37,358.91 |
| D2 (overtime for US) | $453.08 | $69.15 | $90.62 | $612.86 | $37,358.91 | $37,971.77 |

As described above, Plaintiffs are entitled to damages based on different obligations under different CBAs. And the Court finds that some Defendants are alter egos of one another and can be held jointly and severally liable for amounts owed based on the CBA obligations. "It also goes without saying that the courts can and should preclude double recovery . . . ." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). Thus, obviously, Plaintiffs can recover from

each Defendant, jointly and severally, *up to the total amount awarded* to Plaintiffs and up to each individual Defendants' maximum liability.

### 2. Attorneys' Fees and Costs

Plaintiffs request reasonable attorneys' fees and costs in their amended complaint and in their Motion for Default Judgment. (ECF No. 1, at 12; ECF No. 34, at 23.) "Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)). But the Supreme Court has "recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 260 (1975)). ERISA is such a statute, and it provides plaintiffs with the right to request and collect reasonable attorneys' fees and costs incurred in collecting unpaid sums due under ERISA. 29 U.S.C. § 1132 (g)(2)(D).

In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

The Federal Rules of Civil Procedure allow the prevailing party an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1).

Considering the factors explained by the Fourth Circuit in *Robinson*, the Court finds that the attorney's fees identified in the affidavit attached to the memorandum are reasonable. The affidavit of Diana M. Bardes and accompanying exhibits establishes attorneys' fees of $15,006.50 based on 64.6 hours of counsel's time. (ECF No. 34-2 ¶ 5; ECF No. 42-2.) The total costs associated with this matter are $955.41, made up of process server fees and the $402 filing fee. (ECF No. 34-2 ¶ 6.) The Court recommends therefore an award to Plaintiffs of $16,363.91 for costs and fees. (ECF No. 42 at 3.)

The billing record with hours worked, descriptions of work done, and rates applied are attached to the Bardes affidavit and the supplemental brief filed on June 25, 2024. (ECF No. 34-2 Ex. 1; ECF No. 42-2) Lori Wood's affidavit, who serves as the executive director of NPF, described the process of choosing legal representation and approving the attorneys' fees and costs associated with this matter. (ECF No. 34-2 Ex. 2.) Ms. Wood explained that she approved Ms. Bardes' law firm's proposal based on several factors, including the reasonable agreed upon hourly rate. (*Id.* ¶ 7-8.) Finally, attached to Ms. Wood's affidavit are three decisions from this Court awarding similar attorneys' fees and costs for ERISA cases. (*Id.* Exs. 3, 4, 5.)

For these reasons, the undersigned finds that the hourly rate charged by Ms. Bardes aligns with the hourly rates of attorneys of the same level of experience in the Northern Virginia area. The time expended on this matter was appropriate and consistent with the time expended in similar cases. The undersigned finds therefore as reasonable the total amount of $16,363.91 in

costs and attorneys' fees. *See, e.g.*, *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Chaney Inc.*, No. 1:15CV1452 (GBL/JFA), 2016 WL 3552108, at *4 (E.D. Va. Apr. 22, 2016), *report and recommendation adopted sub nom. Trustees of the Plumbers v. Chaney Inc.*, No. 1:15-CV-1452, 2016 WL 3552239 (E.D. Va. June 23, 2016) (awarding fees of $2,365 for 12 hours of work on an ERISA matter).

### 3. Injunctive Relief

Plaintiffs also request injunctive relief pursuant to 29 U.S.C. § 1132 (g)(2)(E), which allows a court to award the plan "such other legal or equitable relief as the court deems appropriate." Plaintiffs request an order requiring Defendants to provide records including payroll records, check registers, and general ledgers from July 2021 through the present. (ECF No. 34 at 22.) Plaintiffs claim that they require this relief to determine whether additional contributions are due. (*Id.*) Plaintiffs also ask this Court to retain jurisdiction until Defendants have produced the requested information. (*Id.* at 23.)

Before granting injunctive relief, a court must balance the following factors: (1) the likelihood of success on the merits of plaintiff's claim (for a preliminary injunction), or the existence of actual success on the merits (for a permanent injunction); (2) the likelihood of irreparable injury to the plaintiff in the absence of an injunction; (3) the likelihood of harm to other interested persons if an injunction is issued; and (4) the public interest in granting versus denying the injunction. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Plaintiffs have shown actual success on the merits because this Court has awarded them a default judgment. *See supra* Section III.B. *See also Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Marquette Mech. Contractors, Inc.*, No. 110-cv-00150LOIDD, 2010 WL

17

11701299, at *4 (E.D. Va. Aug. 24, 2010), *report and recommendation adopted*, No. 1:10-cv-150, 2010 WL 11701300 (E.D. Va. Sept. 16, 2010). Plaintiffs also have a right to ensure that the Funds receive all contributions to which they are entitled for the benefit of their participants and beneficiaries. (ECF No. 40 at 2-3.) Defendants have failed, and continue to fail, to make such contributions, demonstrating a likelihood of irreparable injury. *See Nat'l Stabilization Agreement of the Sheet Metal Indus. Tr. Fund v. Indiana Panel & Glass Erectors, Inc.*, No. CIVA 1:08-cv-731, 2008 WL 4966896, at *4 (E.D. Va. Oct. 21, 2008) (finding defendants failure to contribute evidence of continued irreparable injury warranting injunctive relief). There also is no likelihood of harm to other interested persons if the injunctive relief is awarded. Finally, the harm to the public in granting versus not granting the injunction leans in favor of granting the injunctive relief requested. As stated, Defendants continued failure to make contributions causes losses to Plaintiffs, as well as to its beneficiaries of the Funds. *See Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. B.O.C. Heating & Air Conditioning Co.*, No. 1:09-cv-01127 CMHIDD, 2010 WL 2976504, at *4 (E.D. Va. May 11, 2010), *report and recommendation adopted sub nom. Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. B.O.C. Heating & Air Conditioning*, No. 1:09-cv-1127, 2010 WL 2976495 (E.D. Va. July 16, 2010).

Having shown all four factors warrant granting injunctive relief, the undersigned recommends that Plaintiffs should be awarded injunctive relief requiring Defendants to provide the requested records requested.

### IV. Recommendation

The undersigned recommends entry of default judgment for Plaintiffs and against Defendants. The undersigned finds that the submitted pleadings and affidavits establish that Plaintiffs have a right to a default judgment and damages of $$37,971.77. Of this total sum:

18

- US is liable for $35,826.94 of the total damages awarded,
- UM is jointly and severally liable for $37,358.91 of the total damages awarded, and
- D2 is jointly and severally liable for $37,971.77 of the total damages awarded.

The undersigned also recommends that Defendants, jointly and severally, pay Plaintiffs' attorneys' fees and costs in the amount of $16,363.91. The recommended total award is $54,335.68.

The undersigned further recommends granting Plaintiffs the following injunctive relief against all Defendants: that each Defendant be ordered to provide payroll records, check registers, and general ledgers from July 2021 through the present. If further action is needed to enforce and collect this judgment, Plaintiffs should be permitted to apply to this Court or to the court in which enforcement is sought for further reasonable attorneys' fees and costs in addition to those set out in this Report and Recommendation.

### V.     Notice

Through the Court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to US and UM at 527 E Chestnut Avenue, Vineland, NJ 08360 and to D2 at 411 South 6th Street Suite 2, Vineland, NJ 08360, the parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of this proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 3rd day of July 2024.

Alexandria, Virginia

_____
William B. Porter
United States Magistrate Judge